IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGE CORNELIUS NEVITT,

   Plaintiff,

  v.

STANDARD INSURANCE
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-3641-TWT

ORDER

This is an ERISA case involving a disability policy. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 23], the Plaintiff's Motion for Summary Judgment [Doc. 56], the Defendant's Additional Motion for Summary Judgment [Doc. 66], and the Plaintiff's Motion to Strike the Defendant's Additional Motion for Summary Judgment [Doc. 80]. For the reasons stated below, the Defendant's Motion for Summary Judgment [Doc. 23] is DENIED, the Plaintiff's Motion for Summary Judgment [Doc. 56] is GRANTED, the Defendant's Additional Motion for Summary Judgment [Doc. 66] is DENIED, and the Plaintiff's Motion to Strike [Doc. 80] is DENIED as moot.

I.  Background

Plaintiff George Nevitt was an attorney at Ellzey & Brooks, LLC. He fell down a flight of stairs on June 19, 2001. Following the accident, he received long-term disability benefits from Defendant Standard Insurance Company under an employee welfare benefit plan maintained by his employer pursuant to Section 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA). In April 2007, Standard terminated Nevitt's benefits based on the plan's mental disorder limitation. After exhausting administrative remedies, Nevitt sued Standard to recover additional benefits. Standard moved for summary judgment, Nevitt filed a cross-motion for summary judgment, and Standard filed an additional motion for summary judgment. Nevitt then moved to strike Standard's additional motion for summary judgment.

A.   Policy Language

The group policy maintained by Nevitt's employer provides "own occupation" disability coverage to attorneys. The policy states:

> You are disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy, or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.

(STND 00010.) The policy limits payment of long term disability benefits to twenty-four months for "each period of continuous Disability caused or contributed to by a

Mental Disorder." (STND 00018.) The limitation includes conditions such as "depression and depressive disorders" and "anxiety and anxiety disorders." (Id.)

   B.   Nevitt's Claim for Benefits

After his fall, Nevitt experienced frequent migraine headaches, pain in his cervical spine and both arms, and impaired cognitive skills. In August, he saw Dr. Rolf Meinhold, a primary physician, Dr. B.R. Drexinger, a neurologist, and Blair Markowitz, a physical therapist. (See STND 00338-00340, 00362-00363 (Records of Markowitz), STND 00330-00336 (Records of Dr. Meinhold), 00155-00156, 00464-00475 (Records of Dr. Drexinger)). Shortly thereafter, he began working reduced hours due to his injuries. In September, he underwent a cervical MRI which revealed a herniated C4-C5 disc with cord abutment, a bulging C5-C6 disc with "obliteration" of the subarachnoid space and bilateral narrowing of the foraminal canal, a herniated disc at C6-C7 with deformation of the spinal cord on the left, a herniated disc at C7-T1, and a small protrusion at T1-T2. (STND 00164-00165.)

On November 15, 2001, Nevitt filed a claim for partial disability benefits. Because he submitted a disability claim before he had participated in the plan for a year, Standard conducted a pre-existing condition investigation. As part of the investigation, Dr. Brad Fancher, an internal medicine consultant, reviewed his medical records. Dr. Fancher noted that Nevitt's symptoms should "gradually improve in the

future." (STND 00440.)  However, Nevitt continued to experience cervical pain, migraine headaches, and cognitive problems.  In May 2002, he saw Dr. Florence Barnett, a neurosurgeon, at the advice of Dr. Drexinger.  (See STND 00118-00122.)  Dr. Barnett diagnosed cervical disc herniations with spondylitic spurring and suggested spinal surgery.  (Id.)  Nevitt was reluctant to have surgery, so Dr. Barnett referred him to Dr. Daniel Danyo, a board certified Pain Management and Rehabilitation Specialist.  (See STND 00129-00142, 00183-00187, 00280-00293, 02174-02212.)  Since 2002, Nevitt has seen Dr. Danyo on a regular basis.  (Id.)

In December 2003, Nevitt stopped working altogether.  (See STND 132.)  Soon after, he had an Independent Medical Examination with Dr. Earnest Howard.  (See STND 01193-01195.)  The examination was performed in connection with Nevitt's workman's compensation claim.  Dr. Howard reported that Nevitt could "return back to some sort of modified duty within the field or related fields of his expertise."  (Id.)  After his examination with Dr. Howard, Nevitt saw Dr. Barnett.  (See STND 00118-00122.)  She again recommended surgery and referred Nevitt to Dr. Damond Logsdon, a neuropsychologist.  (See STND 02132-02138.)  Dr. Logsdon diagnosed post-concussive syndrome and concluded that Nevitt's cognitive defects impaired his ability to practice law.  (Id.)  He also noted that Nevitt's emotional distress affected

his cognitive impairment and recommended pharmacological treatment for depression. (Id.)

In August 2004, Standard ordered an independent medical examination by Dr. Mark Brooks. (See STND 01270-01279.) Dr. Brooks concluded that there were no neuropsychological issues that would limit Nevitt's return to work. (Id.) Dr. Logsdon, Nevitt's treating physician, disagreed and continued to restrict Nevitt from work. (STND 00828.) In August 2005, Standard asked Dr. Lawrence Zivin, a neurologist, to review Nevitt's records. (See STND 01188-01192.) Dr. Zivin concluded that Nevitt was not disabled from practicing law but recommended followup treatment for his migraines. (Id.) Standard also asked Dr. Linda Toenniessen, a psychiatrist, to review Nevitt's records. (See STND 01136-01139.) She reported that Nevitt had suffered from major depression at times but concluded that he could return to work with emotional support. (Id.) However, Nevitt's treating physicians continued to restrict him from work. In October 2006, Standard ordered an independent medical examination by Dr. Bruce Bosse, a neurologist. (See STND 01095-01096.) Dr. Bosse noted that Nevitt's complaints were out of proportion to his injury and concluded that Nevitt could perform a sedentary desk job without any restrictions. (Id.)

In April 2007, Standard terminated Nevitt's disability benefits, stating that his benefits were limited to twenty-four months because anxiety and depression contributed to his disability. (STND 01068-01078.) Nevitt appealed Standard's decision on October 12, 2007. (STND 02041-02070.) In his appeal, he asserted that his cervical pain, migraine headaches, and brain injury were independently disabling and therefore not subject to the mental disorder limitation. (Id.) He provided additional evidence, including a detailed account of the fall, letters from family and friends, a functional capacity evaluation and job simulation test, and affidavits from Dr. Barnett and Dr. Danyo supporting his claim. Standard referred the appeal to the claims department, where the original claims specialist reviewed the appeal materials and upheld its decision to terminate Nevitt's benefits.

Standard then sent Nevitt's appeal to its Administrative Review Unit for independent review. Nevitt submitted several additional documents to the Administrative Review Unit. First, he sent a report by Dr. Joseph Saba, a neurologist, stating that "[Nevitt's] migraines, in and of themselves, would cause him to unpredictably miss five to seven days of work per month." (See STND 00748-00752.) Second, he submitted a report by Earl Thompson, a certified vocational consultant, stating that Nevitt was incapable of practicing law. (See STND 02165-02166.) Standard also supplemented the existing record. It asked Dr. William Platt,

a neurologist, to review Nevitt's medical records. (See STND 00702-00724.) Dr. Platt attributed Nevitt's disability to depression and anxiety. (Id.) He noted that migraines might impair Nevitt for one to two days per occurrence but concluded that this would not disable him from practicing law. (Id.)

On February 12, 2008, the Administrative Review Unit upheld Standard's termination of benefits and gave Nevitt the medical reports upon which it relied in making its determination. Nevitt underwent additional tests in response to concerns articulated by Standard's consulting physicians. Standard referred Nevitt's new test results to the original claims specialist, but the claims specialist stated that the results contained "no new information, comments or arguments" and upheld its decision to terminate benefits. (STND 00512, 00502.) Nevitt then filed this action.

II. Summary Judgment Standard in ERISA Benefits Denials Cases

Summary judgment motions filed in ERISA cases are reviewed slightly differently than summary judgment motions in other cases. Bates v. Metropolitan Life Ins. Co., No. 5:08-CV-22, 2009 WL 2355834, at *1 (M.D. Ga. July 27, 2009). Summary judgment is normally appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[i]n an ERISA benefit denial case ..., the district court sits more as an

appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Curran v. Kemper Nat. Servs., Inc., No. 04-14097, 2005 WL 894840, at *7 (11th Cir. March 16, 2005) (unpublished per curiam opinion) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)).

Although "ERISA provides no standard for reviewing decisions of plan administrators, "Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004), the Eleventh Circuit Court of Appeals has adopted a "well-defined series of steps in reviewing a denial of benefits decision in an ERISA case." Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1231-32 (11th Cir. 2006). Prior to 2008, this analysis required the District Court to:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine

if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Williams, 373 F.3d at 1138. In 2008, the Supreme Court decided Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008), which "implicitly overrule[d] [Williams] to the extent it requires district courts to review benefit determinations by a conflicted administrator under the heightened standard." Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1360 (11th Cir. 2008). Accordingly, "the existence of a conflict of interest [is now] merely a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." Id. Additionally, the plaintiff now has the burden of showing that the decision was unreasonable. Id.

### III. Discussion

#### A. De Novo Review of Standard's Decision

The Court begins by applying the de novo standard to determine whether Standard's decision to terminate Nevitt's benefits was wrong. In so doing, the Court is limited to the administrative record. See Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241 (11th Cir. 2008) ("The court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the

same decision as the administrator."). Accordingly, the issue at this step is whether the administrative record shows that a mental disorder "caused or contributed to" Nevitt's inability to "perform with reasonable continuity the material duties of [an attorney.]" (See STND 00010.)

The parties dispute whether the mental disorder limitation applies to a claimant who suffers from anxiety and depression but is independently disabled by a co-existing physical disease or injury. Nevitt asserts that the limitation should not limit benefits if a claimant would be totally disabled absent his mental disorder. The Standard Claim Manual supports this interpretation. It provides:

> LTD benefits will end when the [mental disorder] limitation period ends, unless the claimant remains Disabled as a result of a covered Physical Disease, Injury, Pregnancy, or combination thereof. In other words, LTD Benefits will end if, at the end of the limitation period, the claimant would not meet the definition of Disability absent the Mental Disorder.

(Pl.'s Br. in Supp. of Mot. to Compel Disc., Ex. 32 at 4.) The Court agrees, and finds that the mental disorder limitation applies only to the extent that Nevitt is not independently disabled by migraine headaches, cervical injuries, and post-concussive syndrome.

Although the record arguably supports Standard's conclusion that Nevitt's depression, anxiety, and fear of surgery "contribute to" his cervical pain and cognitive defects by interfering with his recommended treatment, the record does not support

the conclusion that a mental disorder contributes to the frequency or severity of his migraine headaches. According to Nevitt, he experiences migraines on average every ten to fourteen days. (STND 02074.) He says that the migraines last between twelve hours and five days, with an average of twenty-four to thirty-six hours, and "completely incapacitate" him eight to ten days per month. (Id.) Although subjective, Nevitt's account of his headaches has remained consistent since the accident, and he has passed all objective tests of malingering and symptom exaggeration. (STND 02123.)

Moreover, medical records from Dr. Drexinger, Dr. Barnett, Dr. Danyo, and Dr. Saba substantiate Nevitt's description of his headaches and their impact on his daily activities. (See Affidavit of Dr. Saba, STND 00748 ("[I]t is clear that the patient's migraines, in and of themselves, would cause him to unpredictably miss at least five to seven days of work per month."); Affidavit of Dr. Danyo, STND 02126 ("It is my opinion within a reasonable degree of medical certainty that Mr. Nevitt's migraine headaches render him totally incapacitated on average five to eight days per month. He would likely suffer from fairly severe fatigue for a day or two after each migraine sufficient to interfere [with] high level cognitive work such as practice of law."); Affidavit of Dr. Barnett, STND 02144 ("It is my opinion within a reasonable degree of medical certainty that Mr. Nevitt would be completely incapacitated from any

mental or physical work activity when his migraines are active.")). Also, the employability analysis performed by Earl Thompson shows that Nevitt's migraines independently disable him from practicing law. The report concludes:

> Based on [the medical records,] Mr. Nevitt had three conditions, any of which would disable him from the practice of law: Cervical injuries, migraine headaches and traumatic brain injury. . . . Mr. Nevitt's need to miss 5 to 8 days per month because of his migraines would be considered excessive with regard to standard, acceptable absenteeism rates by employers (0 to 1 day per month) and would lead to reprimands and eventual termination.

(STND 02165-02166.)

Notably, the record contains little evidence disputing the severity of Nevitt's headaches. In denying Nevitt's claim, Standard relied on medical evaluations by Dr. Zivin, Dr. Brooks, Dr. Platt, Dr. Bosse, Dr. Howard, and Dr. Toenniessen. However, Dr. Toenniessen, Dr. Howard, and Dr. Brooks never evaluated or addressed Nevitt's migraines. Instead, Dr. Toenniessen evaluated Nevitt's psychiatric impairments and Dr. Brooks evaluated his neuropsychological impairments. (See STND 01136-01139 (Records of Dr. Toenniessen); STND 01270-01279 (Records of Dr. Brooks)). Similarly, Dr. Zivin, Dr. Bosse, and Dr. Platt noted that Nevitt experienced severe migraines but failed to directly address the extent to which his headaches impacted his ability to practice law. (See STND 01188-01192 (Opinion of Dr. Zivin); STND 01095-01096 (Records of Dr. Bosse); STND 00702-00724 (Opinion of Dr. Platt)).

Instead, they focused primarily on Nevitt's cervical injuries and post-concussive syndrome. (See id.) Accordingly, the Court finds that the record overwhelmingly supports the conclusion that Nevitt suffers from incapacitating migraines on a regular basis.

Nothing in the administrative record suggests that a mental disorder contributes to Nevitt's migraines. To the contrary, Nevitt's treating physicians each noted that his migraines were likely related to his cervical injuries and were "not surprising" given his condition. (See STND 02125-02126 (Affidavit of Dr. Danyo); 02143-02144 (Affidavit of Dr. Barnett)). Accordingly, the Court finds that Standard's decision to terminate Nevitt's benefits based on the mental disorder limitation was clearly wrong.

B. Reasonableness of Standard's Decision

The second step in the Williams analysis directs the Court to determine whether the plan vests discretion in the administrator. Williams v. BellSouth Telecomms., 373 F.3d 1132, 1138 (11th Cir. 2004). Here, the plan clearly grants Standard discretion. (STND 00020 ("[W]e have full and exclusive authority to . . . interpret the Group Policy . . . .")). Accordingly, the Court next considers whether Standard's decision to terminate benefits was substantively and procedurally reasonable. See Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343, 2350 (2008).

In Creel v. Wachovia Corp., No. 08-10961, 2009 WL 179584 (11th Cir. Jan. 27, 2009) and Oliver v. Coca-Cola Co., 497 F.3d 1181, 1196-97 (11th Cir. 2007), vacated in part on other grounds, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In Creel, the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard diagnoses, and lab reports from multiple physicians to support her claim, but the district court entered summary judgment against her because she did not provide objective evidence. The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be

> unreasonable if it failed to identify what objective evidence the claimant
> could have or should have produced, even if the administrator submitted
> the file for peer review.

Id. at *7. Applying this standard, the court found that the records offered by the plaintiff to corroborate her subjective complaints of disabling headaches were sufficient to support her claim and held that the administrator's decision was both wrong and unreasonable. Id. at *8.

Similarly, in Oliver, the plaintiff sued his employer to recover long term disability benefits based upon radiculopathy and associated cervical pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it was arbitrary and capricious for an employer to deny benefits for disabilities involving elements of subjective pain when the claimant provided ample evidence and the administrator never requested any additional kind of evidence. Oliver, 497 F.3d at 1196-97.

Here, Nevitt provided objective and subjective evidence similar to that offered in Creel and Oliver. His medical records contain at least thirty complaints about severe headache pain spanning from August 6, 2001, to his most recent evaluation. (See Pl.'s Brief in Supp. of Mot. For Summ. J. at 21, n.10.) His treating physicians report that his subjective claims are consistent with medical literature on cervical injuries, and objective examinations have shown no signs of malingering or symptom

exaggeration. (STND 02123, 02125-02126, 02143-02144.) Moreover, Standard did not request any other type of subjective or objective evidence, and the policy does not require objective evidence. (See STND 00010.) Although Standard ordered independent medical examinations and submitted Nevitt's file for peer review on several occasions, only two of the physicians actually examined Nevitt, and none provided any basis for the conclusion that Nevitt's migraines are not disabling. To the contrary, each glossed over the issue of Nevitt's migraine pain and failed to directly address the opinions of Nevitt's treating physicians who explained at length why his migraines incapacitated him for five to eight days a month. Standard's consultants fail to appreciate the physical and mental demands of the active practice of law. Accordingly, the Court finds that Standard's decision to terminate Nevitt's disability benefits was substantively unreasonable under Creel and Oliver and does not reach the question of whether Standard's actions were procedurally unreasonable under Glenn.

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment [Doc. 56] is GRANTED, the Defendant's Motions for Summary Judgment [Docs. 23, 66] are DENIED, and the Plaintiff's Motion to Strike [Doc. 80] is DENIED as moot.

SO ORDERED, this 3 day of December, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge